UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

TAMMY KECZMER,

                Plaintiff,

   v.

BASIC AMERICAN, INC. dba
BASIC AMERICAN FOODS,

                Defendant.

Case No. 4:10-CV-00605-CWD

**MEMORANDUM DECISION AND
ORDER**

## INTRODUCTION

Plaintiff Tammy Keczmer's motion to amend her complaint is currently pending

before the Court. (Dkt. 15.) The Court conducted a hearing on July 12, 2011, and took the

matter under advisement at the conclusion of the hearing. After carefully reviewing the

record, the parties' memoranda, and their legal arguments, the Court will grant Plaintiff's

motion to amend.

## BACKGROUND

Plaintiff Tammy Keczmer ("Keczmer") filed a complaint against her employer, Defendant Basic American, Inc., ("Basic"), on December 7, 2010. She alleges violation of her rights under the Family and Medical Leave Act ("FMLA"), and seeks damages for front pay, back pay, and benefits under the Act. (Dkt. 1.) Keczmer claims that on February 12, 2010, Basic wrongfully terminated her employment effective February 8, 2010, for the stated reason that Keczmer was absent without approved leave. However, Keczmer alleges that her supervisor sent her home from work on February 2, 2010, and knew Keczmer's absences on February 3, 6, 7, and 8 were due to a serious health condition requiring medical treatment. Keczmer claims she provided notice of her medical condition in compliance with the FMLA, including providing Basic with a doctor's note on February 12, 2010. Keczmer claims that, despite such notice, Basic terminated Keczmer's employment due to her four absences from work on February 3, 6, 7, and 8.

On January 27, 2011, the Court entered a case management order setting forth pre-trial deadlines, including a deadline of March 4, 2011, by which to file amendments to the pleadings. Keczmer filed her motion to amend on May 16, 2011, proposing to add an additional count for breach of contract. In the proposed amended complaint, Keczmer alleges that Basic adopted an Attendance and Leave Policy (the "Policy") in accordance with a Collective Bargaining Agreement ("CBA") between Basic and the International

Brotherhood of Teamsters Local 983, a union of which Keczmer is a member. Keczmer

alleges that Basic terminated Keczmer's employment in violation of the Policy. Keczmer

seeks damages under her breach of contract theory in the form of both back and front pay,

and loss of benefits. (Dkt. 15-1.)

Basic opposes the motion on the grounds that the proposed amendment is futile

under Fed. R. Civ. P. 15(a) because the breach of contract claim is preempted by Section

301 of the Labor Management Relations Act, ("LMRA"), 29 U.S.C. § 185.[1] Basic

contends that the breach of contract claim is inextricably intertwined with the terms of the

existing CBA, and therefore preempted. Further, Basic asserts that Keczmer cannot

maintain a claim under the LMRA because she did not allege and cannot demonstrate

compliance with the grievance procedures mandated by the CBA between Basic and the

Union, a necessary prerequisite to a Section 301 claim.

Keczmer disagrees that Section 301 preempts her breach of contract claim, arguing

that the CBA does not govern Basic's Policy nor does it reference an attendance and

leave policy, and therefore the Policy exists separate and apart from the CBA. (Reply at 2,

Dkt. 18.) Keczmer contends that the terms of the Policy create a contract between Basic

and its employees, and therefore she should be permitted to amend her Complaint to

assert a claim for breach of the Policy.

---

[1] Although Basic notes that Keczmer filed her motion after the March 4, 2011 deadline,
Basic does not oppose the motion on untimeliness grounds. (Mem. at 2, Dkt. 16.) Keczmer
asserts that she did not learn of the Collective Bargaining Agreement, or the Attendance Policy,
until deposing Basic's representative on May 5, 2011. (Aff. of Counsel ¶ 3, Dkt. 15-2.)

**DISPOSITION**

**1. Legal Standards Under Rule 15(a)**

Fed. R. Civ. P. 15(a) provides that amendments to pleadings should be liberally granted in the interests of justice. The rule states: "[A] party may amend the party's pleadings only by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, the right to amend is not absolute. When determining whether amendments should be granted, the Court should consider " undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of amendment, futility of amendment, etc. . . ." *Foman v. Davis,* 371 U.S. 178, 182 (1962). Prejudice to the opposing party is the most important factor for consideration. *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) *citing Zenith Radio Corp. v. Hazeltine Research Inc.*, 401 U.S. 321, 330-31 (1971).

In the instant case, Basic does not claim prejudice, bad faith, undue delay, or dilatory motive. Further, Basic expressly represents that it does not oppose Keczmer's motion on the grounds that it was filed untimely contrary to the deadline set forth in the Case Management Order. Basic's opposition is premised solely on the grounds that the amendment would be futile because the Policy cannot be interpreted without reference to the CBA, thereby mandating application of Section 301 of the LMRA and preempting

Keczmer's claim. Therefore, a closer analysis of the Policy's language and the CBA is required.

**2. The Terms of the CBA and the Policy**

The CBA does not expressly reference an attendance or leave policy. (Second Aff. of Counsel Ex. A, Dkt. 18-1.) However, the CBA infers in several of its provisions that one may be created by Basic's management. The CBA covers all of Basic's employees. (*Id.* Ex. A ¶ 4.) Under the CBA's terms, Basic must reduce "house rules or working rules or regulations of the company affecting general conduct of employees . . . to writing in a form easily read and understood and . . . permanently post[] [a copy] in conspicuous places throughout the plant. A copy of the house rules shall be sent to the Union." (*Id*. Ex. A Article II ¶ 4.) Basic is permitted to "discharge or suspend any employee for unsatisfactory work, violation of house rules, or other just cause." (Article II ¶ 7.) If a serious problem arises that warrants discharge or suspension without prior notice, Basic is permitted to exercise its right to discharge an employee provided it notifies the Union promptly of the action taken and the reasons for doing so. (Article II ¶ 7.) "Any dispute related to Section 7 of Article II shall be subject to the grievance procedure of the [Collective Bargaining] Agreement." (*Id.*)

The CBA also sets forth benefits owed to Basic's union employees, including disability pay benefits for employees unable to work due to disability arising from injury or illness. (Article VII ¶ 1.) Benefits are payable after a three day waiting period except

**MEMORANDUM DECISION AND ORDER - 5**

for instances requiring hospitalization or invasive surgical procedures. And, benefits are payable for as long as twenty-six weeks for each separate period of disability. (Article VII ¶ 3.) Employees are entitled to benefits for "[a]ll disabilities due to injury or illness," except in the case of specific listed exclusions. (Article VII ¶ 4.)

The CBA contains a leave of absence provision stating that Basic "may grant a Leave of Absence in writing on a Leave of Absence Form." (Article X ¶ 2.) Although the CBA does not elaborate on what constitutes grounds for granting leave, there is a notice provision requiring an employee wishing to return early from a Leave of Absence to give seventy-two hours advance notice. (Article X ¶ 4.) "An employee returning early from a Medical Leave of Absence shall be reinstated within forty-eight (48) hours after the employee notifies the Human Resources Department during normal working hours that he has been released by his doctor for full duty." (*Id.*)

Basic adopted a separate Attendance and Leave Policy (the "Policy"). (Second Aff. of Counsel Ex. B, Dkt. 18-1.) Leave may be granted "at the Company's discretion" and will not be counted as an "absence occurrence under the attendance policy" mandating disciplinary action. A request for leave must be approved at least 24 hours before the start of the leave, except in cases of "compelling family emergencies." Leave "may be granted" for a list of specified reasons, including "Medical (limited to qualifying disability leave for hospitalization or extended illness)." If leave is not granted, an "absence" will be recorded. Disciplinary action consists of either a series of written

warnings up to termination for absences during a shift, or if the employee has failed to call or not shown for a shift two times within a twelve month period, employment may be terminated. Mr. Ken Carroll, Basic's designee, testified that the Policy was negotiated with the Union because it constitutes a "working condition" over which the Union has control. (Second Aff. of Counsel Ex.C, Dkt. 18-1.) According to Mr. Carroll, if an employee disagreed with any action taken by Basic under the Policy, his understanding was that the employee could exercise his or her right to "file a grievance under Article XV" of the CBA. (*Id.*)

### 3. Analysis

#### A. *Preemption*

A suit for breach of a collective bargaining agreement is governed exclusively by federal law under Section 301of the LMRA. *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987). "The preemptive force of section 301 is so powerful as to displace entirely any state claim based on a collective bargaining agreement . . . and any state claim whose outcome depends on analysis of the terms of the agreement." *Young*, 830 F.2d at 997 (citations omitted).

In *Cramer v. Consolidated Freightways, Inc.*, 255 F.3d 683 (9th Cir. 2001), the United States Court of Appeals for the Ninth Circuit clarified the precedent regarding the preemption doctrine under Section 301 of the LMRA. If the plaintiff's claim cannot be resolved without "interpreting the applicable CBA . . . it is preempted. Alternatively, if

the claim may be litigated without reference to the rights and duties established in a CBA . . . it is not preempted." *Cramer*, 255 F.3d at 691 (citations omitted).

However, the court acknowledged that the demarcation between preempted claims and those that survive Section 301's application is not "a line that lends itself to analytical precision." *Cramer*, 255 F.3d at 691. Whether a claim "substantially depends" upon interpretation of a CBA turns on the specific facts of each case. *Id.* The plaintiff's claim is the starting point for the analysis, and the Court must therefore look at whether the need to interpret the CBA is inherent in the nature of the Keczmer's claim, or whether the claim is plainly based on state law independent of the CBA. *Id.*

It is not enough, however, for the defendant to claim preemption simply because the court may have to consult the CBA to evaluate the plaintiff's claim. *Id.* at 692. Rather, adjudication of the claim "must require interpretation of a provision of the CBA." *Id.* Only if the state law claim can be resolved without interpreting the agreement itself is it considered independent of the agreement for Section 301 preemption purposes. *Id*. at 690.

In this case, Keczmer seeks to amend her complaint to assert a state law claim of breach of contract based upon Basic's alleged violation of its Policy. While sufficient to satisfy Rule 8's notice pleading requirements, the claim for breach of contract does not elaborate regarding its relation to the CBA other than setting forth that the Policy was "adopted . . . in accordance with" a CBA.

Based upon the allegations in the proposed amended complaint and the record, the

Court is unable, at least pursuant to Basic's motion under Rule 15, to determine whether

the claim for breach of contract is preempted. The allegations of the proposed amended

complaint rely upon the Policy, and do not implicate the CBA other than to specify the

Policy was adopted pursuant to the CBA. The proposed amended complaint does not refer

to or appear to require interpretation of any specific provision of the CBA. Nor does it

quote from the CBA, or seek to enforce any specific term in the CBA. *Cf. Jackson v. So.

Cal. Gas Co.*, 881 F.2d 638, 642 (9th Cir. 1989) (where complaint for breach of contract

quoted the collective bargaining agreement at length, the claim was one to enforce the

collective bargaining agreement and was preempted by Section 301).

Basic argued that the CBA explicitly governs "house rules" and disciplinary

proceedings, and that the Policy constitutes such a house rule requiring the Court to

interpret the CBA. However, the CBA simply requires all "house rules" affecting

"general conduct" of Basic's employees to be in writing and sent to the Union. If the

Policy is a house rule, there is no evidence presently in the record indicating whether the

Policy was sent to the Union in accordance with the CBA other than Mr. Carroll's

testimony that the Policy was "negotiated with" the Union. The Policy therefore may not

constitute a house rule. Even if it is a house rule, the Policy does not depend upon

interpreting anything within this section of the CBA. *See Detabali v. St. Luke's Hosp.*,

482 F.3d 1199, 1203 (9th Cir. 2007) (holding that, where there was no dispute over the

meaning of any term within the collective bargaining agreement, resolution of the issue of

discrimination did not depend upon interpretation of the collective bargaining agreement.

The CBA permits Basic to discharge an employee for "violation of house rules, or

other just cause," and such conduct must not be "arbitrary or discriminatory." In the event

of a "serious problem" that warrants discharge without prior notice to the Union, Basic

must notify the Union. Again, there is no evidence presently in the record whether this

provision of the CBA might be implicated. The proposed amended complaint does not

contend that Basic violated a house rule, only that it violated the Policy. It is not clear if

Basic's conduct at this stage would implicate the prohibition against arbitrary and

discriminatory conduct. In any event, inherent within the Policy itself, as with any

contract, would be a prohibition against applying its terms unfairly. Finally, it is not clear

whether the provision requiring notice to the Union is implicated, whether Basic provided

such notice, and if Basic did not provide notice, how that would affect Keczmer's claim.

Finally, Keczmer has not specified what damages, other than wages, she is

seeking. The CBA grants employees disability benefits, a right to reinstatement if they

have taken medical leave, and the right to request a leave of absence under certain

circumstances, including for medical issues. While Keczmer's claim for breach of

contract may implicate these provisions, she has not alleged violation of these provisions

in her proposed amended complaint, and therefore on the basis of her allegations she does

not appear to be seeking enforcement of these rights under the CBA. *Cf. Adkins v.*

*Mireles*, 526 F.3d 531, 539 (9th Cir. 2008) ("claims founded directly on rights created by collective bargaining agreements" are preempted).

**B. *Non-Exhaustion***

Basic argues that the CBA requires disputes involving employee conduct under Section II to be resolved subject to the grievance procedure. Basic contends, therefore, that Keczmer's claim fails because she has not sufficiently plead exhaustion under the CBA.

The CBA requires any dispute regarding the application of the CBA, or as to the performance of obligations under the CBA, to adhere to the grievance procedure of Article XV. That section requires an employee to request a pre-grievance meeting within ten calendar days of the occurrence which gave rise to the grievance. The occurrence for Keczmer's grievance in this matter would have been her discharge from employment for alleged unexcused absences, contrary to the provisions of the Policy. According to Article II, disputes concerning discharge in the absence of just cause or in the case of arbitrary conduct are subject to the grievance procedure, with the end result being mandatory arbitration.

But Keczmer has not plead that she exhausted the grievance procedure under the CBA or otherwise implicated this provision in her proposed amended complaint. And Section 7 of Article II requires Basic to have notified the Union of disciplinary action

taken. As discussed above, it is not clear on the record before the Court that the Policy

constitutes a house rule that might be subject to the grievance procedure.


## CONCLUSION

Based upon the foregoing, the Court finds that it is premature at this juncture to

preclude Keczmer's proposed amended complaint under the standards of Rule 15.  The

Court is examining this motion in the context of a motion to amend, and the proposed

amended complaint does not refer to, seek to specifically enforce any provision of, or

otherwise appear to depend upon the CBA. The Court's analysis may change. Generally,

the case law discussing Section 301 and preemption considers the issue in the context of a

motion to dismiss or a motion for summary judgment. But leave under Rule 15 is "freely"

given absent futility. On the record before it, the Court cannot say with definitive

certainty that the proposed amendment is futile. The Court will therefore allow the

amendment, and leave for a later day the resolution of a motion, if filed, that fleshes out

the exact contours of Keczmer's breach of contract claim.

## <u>ORDER</u>

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)      Plaintiff's Motion to Amend (Dkt. 15) is **GRANTED.**



DATED: July 29, 2011

Honorable Candy W. Dale
Chief United States Magistrate Judge